a lawyer as Mr. Ingersoll assented to the decision, is a farther proof to me, that it had been well understood in Pennsylvania to be the proper rule. If, indeed, I were disposed to indulge in any criticism, I might say, that the cases in 4 Johns. 125, and 20 Johns. 102, do not appear to have been much argued or considered; for no general reasoning is to be found in either of them upon principle, and no authorities were cited. The arguments and the opinion contain little more than a dry statement and decision of the point. The first and only case, in which the question seems to have been considered upon a thorough argument, is that in 8 Pick. 260. I regret, that I am not able to follow its authority with a satisfied assent of mind. But in the present case, it strikes me, that the circumstances do not require me to dispose of the more general question, although it is impossible not to feel, that it is fully before the court. My opinion is, that, in the present case, the advances being made in Massachusetts, if the goods sent to Trieste did not fully reimburse the amount, the balance was properly due and payable in Massachusetts. There is not the slightest evidence to prove, that the advances were to be repaid at Trieste, if the consignment did not fully reimburse them. In truth, neither party contemplated the probability, I had almost said the possibility, of the fund not being more than adequate to repay all the advances. The contract, then, appears to me to be in substance this, that the creditors shall be at liberty to reimburse themselves from the proceeds of the sales at Trieste, for the advances. Any personal obligation to repay the advances, in any other manner was not stipulated for. The parties left the rest to the silent operation of law. And my judgment is, that, upon the just principles of law, applied to the contract, the advances, so far as they should not be reimbursed out of the sales of the cargo, were payable, not at Trieste, but at Boston, the place where they were made. In this view of the matter, I remain of the opinion, which was intimated at the argument, that the plaintiffs are entitled only to the balance due at the par of exchange.

## Case No. 5,697.

### GRANT v. MASON.

[See Case No. 5,701.]

## Case No. 5,698.

### GRANT v. MASON.

[2 U. S. Law Int. 34.]

Circuit Court, S. D. New York. 1829.

LAW OF PATENTS.

In the circuit court of the United States, at the late term in New York City, in the important patent case of Grant and Townsend

v. The Raymonds [see Case No. 5,701], two points were presented in a motion for a new trial: (1) Whether in entry of a vacatur of a previous patent, in the office of the secretary of state, the patentee might take out a new patent for the same subject-matter with a more perfect specification; (2) whether the defendant could bar the plaintiff's recovery by showing that the specification was materially defective and ambiguous, without, also, proving that it was rendered so by the patentee, with design to deceive the public. THE COURT were divided in opinion upon both points.

## Case No. 5,699.

### GRANT v. MAXWELL

[2 Blatchf. 220;[1] 26 Hunt, Mer. Mag. 60.]

Circuit Court S. D. New York. June 2, 1851.

CUSTOMS—DEPRECIATED FOREIGN CURRENCY—VALUE OF IMPORTS IN.

1. The proviso to the 61st section of the act of March 2, 1799 (1 Stat. 673), which declares "that it shall be lawful for the president of the United States to cause to be established fit and proper regulations for estimating the duties on goods, wares and merchandise imported into the United States, in respect to which the original cost shall be exhibited in a depreciated currency issued and circulated under authority of any foreign government," is not repealed by the act of May 22, 1846 (9 Stat. 14), which prescribes the rates at which certain foreign coins shall be estimated in computations at the custom-house.

[Cited in Dutilh v. Maxwell, Case No. 4,207.]

2. Notwithstanding the act of May 22, 1846, an importer of foreign goods is entitled, under the proviso to the 61st section of the act of 1799 and the treasury instructions issued for carrying the same into effect, to enter his goods on paying duties only upon their cash value in the country of their purchase; and is entitled, in order to fix that value, to have the paper or nominal value at which they were purchased and invoiced, reduced to its specie value in such country at the time of the purchase, and to enter the goods on that valuation.

3. Where goods were purchased in Austria, in 1850, and imported into New-York, and the invoice and entry set forth the purchase price in paper florins, and they were paid for in paper currency, and it appeared that the paper florin was depreciated in Austria, at the date of the purchase of the goods, below the value of the silver florin, although it was the legal currency in Austria, and was a legal tender at its nominal value: *Held* that, although the act of May 22, 1846, directed the florin of the Austrian empire to be estimated at forty-eight and one-half cents, yet, under the proviso to the 61st section of the act of 1799, and the treasury instructions in regard to invoices made out in a foreign depreciated currency, the goods were chargeable with duty only on their value in silver florins, after allowing for the depreciation.

[Cited in Fiedler v. Maxwell, Case No. 4,760.]
[See Alsop v. Maxwell, Case No. 263.]

This was an action against [Hugh Maxwell] the collector of the port of New York, to re-

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]